**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **RONALD DALE ARGYLE, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-23-19-GLJ** |
| | ) | |
| **MARTIN O'MALLEY,**[1] | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Claimant Ronald Dale Argyle, Jr., requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On December 20, 2023, Martin J. O'Malley became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. O'Malley is substituted for Kilolo Kijakazi as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality

---

[2]  Step one requires Claimant to establish that he is not engaged in substantial gainful activity. Step two requires Claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities.  If Claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied.  If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If Claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where Claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that Claimant *can* perform, given his age, education, work experience, and RFC.  Disability benefits are denied if Claimant can return to any of his past relevant work or if his RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

of evidence must take into account whatever in the record fairly detracts from its weight."

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  *See also Casias*, 933 F.2d

at 800-01.

## Claimant's Background

Claimant was 33 years old at the time of the administrative hearing. (Tr. 40, 249).

He completed high school and has no past relevant work.  (Tr. 32, 261).  Claimant alleges

an inability to work since May 15, 2007, due to a bulging disc in his back, his head, and

swelling in both legs. (Tr. 261).

## Procedural History

On June 23, 2020, Claimant applied for child's insurance benefits based on

disability, as well as for supplemental security income benefits under Title XVI (42 U.S.C.

§ 1381, *et seq.*) of the Social Security Act.  His application was denied initially and upon

reconsideration.   Administrative Law Judge ("ALJ") Cindy Martin conducted an

administrative hearing and determined that Claimant was not disabled in a written decision

dated March 24, 2022. (Tr. 19-34).  The Appeals Council denied review, making the ALJ's

opinion the Commissioner's final decision for the purpose of this appeal. *See* 20

C.F.R.§ 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. At step two,

she determined that Claimant had the severe impairments of degenerative disc disease of

the cervical, thoracic, and lumbar spines, as well as obesity, chronic pain disorder,

depressive disorder, anxiety disorder, and substance use disorder.  (Tr. 23).  Additionally,

she found Claimant had the nonsevere impairments of seizures, migraine, pneumonia, and pleuritic pain in the left lower lung. (Tr. 23). At step three, she determined Claimant did not meet any Listing. (Tr. 23-25). At step four, she found Claimant had the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except that he could only frequently climb, balance, stoop, kneel, crouch, and crawl. Additionally, Claimant could understand, remember, and carry out simple tasks, make simple work-related decisions, and could adapt to occasional changes in work process, but he could only have occasional interaction with coworkers and supervisors and no interaction with the general public, and could not work at a product-rate pace but could perform end-of-day goals. (Tr. 25). The ALJ then concluded that although Claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the national economy such as day worker, laundry laborer, cleaner, garment sorter, mail clerk, cafeteria attendant, document preparer, addresser, and order clerk. (Tr. 32-34).

### Review

Claimant's sole contention of error is that the ALJ erred at step five in evaluating the jobs he could perform, particularly in light of testimony from the vocational expert ("VE"). The Court disagrees, and the ALJ's decision should therefore be affirmed.

At the administrative hearing, the ALJ propounded a series of hypotheticals to elicit testimony from the VE order to determine what jobs Claimant could perform. First, he posited an individual with the same age, education, and work experience as Claimant,

> with the [RFC] to perform medium work as defined in the regulations, except
> frequently climb, balance, stoop, kneel, crouch, and crawl . . . Can
> understand, remember, and carry out simple tasks, can make simple work-

4

related decisions, and can deal with occasional changes in work processes and environment. No production rate pace, but can perform end of day goals. No work with the general public, and occasional interaction with coworkers and supervisors.

(Tr. 69). The VE testified that such person could perform the medium jobs of day worker, DICOT § 301.687-014, SVP 2, with 795,590 jobs; laundry laborer, DICOT § 361.687-018, SVP 2, with 2,239,840 jobs; and cleaner, DICOT § 919.687-014, SVP 1, with 341,660 jobs (Tr. 69). When the ALJ asked the VE to testify regarding jobs falling within light work and the above non-exertional impairments, the VE identified garment sorter, DICOT § 222.687-014, SVP 2, with 2,194,360 jobs; mail clerk, DICOT § 209.687-026, SVP 2, with 79,310 jobs; and cafeteria attendant, DICOT § 311.677-010, SVP 2, with 374,940 jobs. (Tr. 70). When asked about sedentary jobs, the VE identified document preparer, DICOT § 249.587-018, SVP 2, with 2,788,090 jobs; addresser, DICOT § 209.587-010, SVP 2, with 2,242,920 jobs; and order clerk, DICOT § 209.567-014, SVP 2, 119,640 jobs. (Tr. 70). The ALJ then modified the postural limitations from frequent to occasional, and asked whether the light and sedentary jobs identified would remain. The VE testified that they would. (Tr. 70-71). After further questioning, the ALJ asked the VE if his testimony was consistent with the DICOT and SCO ("Selected Characteristics of Occupations"), and he testified that it was. (Tr. 71). Counsel then asked the VE about the normal tolerance for breaks, and whether there was any "wiggle room." (Tr. 72). The VE stated, "15 minutes for every two hours, for every four-hour shift. Oh, pardon me, four hours of a shift. I mean eight-hour shift. And wiggle room, no more than 15 – no more than 15 minutes throughout the entire day. In a nutshell, in most employers, has been my observation that most

employers will not tolerate more than 15% of – most employers will not tolerate an employee being off task more than 15% of the workday.  (Tr. 72).

In his written opinion at step four, the ALJ determined that Claimant's RFC included the limitations from the first, unmodified hypothetical described above before summarizing Claimant's hearing testimony and much of the evidence in the record. (Tr. 25-32).  At step five, she identified the same nine jobs listed above (three each of medium, light, and sedentary work) as jobs Claimant could perform.  (Tr. 33-34).

Claimant contends:  (i) he cannot perform the job of cafeteria worker because it requires significant public contact, (ii) that the VE was "hopelessly confused" about the number of breaks allowed, (iii) that the ALJ failed to asked the VE if his answers differed from the DICOT, (iv) that the reasoning level in eight out of the nine jobs identified was in direct conflict with the limitation to simple tasks, (v) that he cannot perform the job of laundry laborer and the ALJ's hypothetical should have made accommodations for his nonsevere impairments of pneumonia and pleurisy, and (vi) remand is required because the ALJ failed to make individual findings as to whether the number of each job or collective jobs constituted a significant number.  The Court addresses each in turn, though in a slightly different order.

As an initial matter, Claimant's second and third contentions have no merit.  The VE provided a standard response when asked about the number of breaks allowed in a workday, which the VE did, and then further explained that being more than 15% off task is generally not tolerated.  (Tr. 72).  Moreover, this argument is not tied to the jobs identified at step five, much less to problems with Claimant's RFC.  Additionally, the VE

clearly stated that his testimony did not conflict with the DICOT. (Tr. 71).[3]

Claimant's fourth contention is that there is a conflict between the RFC and the jobs identified at step five. Under Social Security Ruling 00-4p, "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified.*" 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added]. Claimant first contends there is a conflict with regard to the reasoning level for all three jobs identified. Claimant asserts he cannot perform eight of the nine identified jobs because they have a reasoning level of 2 or 3.[4] *See* DICOT §§ 301.687-014 (day worker - 2), 919.687-014 (cleaner - 2), 222.687-014 (garment sorter - 2), 209.687-026 (mail clerk - 3), 311.677-010 (cafeteria attendant - 2), 249.587-018 (document preparer - 3), 209.587-0010 (addresser – 2) & 209.567-014 (order clerk - 3). The remaining job, laundry laborer, DICOT § 361.687-018, has a reasoning level of 1. *See also Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability."). Claimant contends that all jobs

---

[3] Plaintiff acknowledges this in the Reply. Docket No. 19, p. 2.
[4] Each DICOT job listing has both an SVP ("Specific Vocational Prep) level, as well as a reasoning level, and they are not always identical.

above a reasoning level of one pose a conflict because the ALJ limited him to simple tasks.

The relevant language from Claimant's assessed RFC states, "The claimant can understand, remember, and carry out simple tasks, make simple work-related decisions, and can adapt to occasional changes in work processes and environment."   (Tr. 25). Reasoning Level 2 requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations."  *See* DICOT §§ 301.687-014 919.687-014, 222.687-014, 311.677-010, 209.587-0010.  Reasoning Level 3 requires a worker to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations."  *See* DICOT §§ 209.687-026, 249.587-018, 209.567-014.  The reasoning levels for jobs in the DICOT best identify the level of simplicity (or, conversely, complexity) associated with the job. *See Cooper v. Barnhart*, 2004 WL 2381515, at *4 (N.D. Okla. Oct. 15, 2004) ("The reasoning level, as identified by Plaintiff, appears more similar to whether or not a claimant has a limitation to performing only simple tasks.") [citations omitted].

If a claimant is limited to simple tasks, it stands to reason that a job requiring the ability to deal with problems involving several concrete variables (a reasoning level 3) would create a conflict.  *See McKinnon v. Astrue*, 2010 WL 3190621, at *5 (D. Colo. Aug. 12, 2010); *Allen v. Barnhart*, 2003 WL 22159050, at *10 (N.D. Cal. Aug. 28, 2003) (examining the requirements of the GED reasoning level of 2 and finding that "[t]he need to follow 'detailed' and 'involved' instructions exceeds the ALJ's limitation of plaintiff to

'simple, routine tasks.' Such instructions are not simple and uncomplicated, or limited to one or two steps."). The Court agrees with the Commissioner, however, that a reasoning level of two is consistent with performing simple tasks and the RFC assigned here, although a reasoning level of three is not. Other courts have reached the same conclusion. *See Hackett v. Barnhart*, 395 F.3d, 1168, 1176 (10th Cir. 2005) ("This level-two reasoning appears more consistent with Plaintiff's RFC [limiting her to simple and routine work tasks.]"); *Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) ("Ms. Stokes' second argument is that the ALJ's limitation to simple, repetitive and routine work should be construed as a limitation to jobs with a reasoning-level rating of one. We disagree."). *See also Danette Renee G. v. Kijakazi*, 2022 WL 17338283, at *15 (D. Kan. Nov. 30, 2022) ("Reasoning Level 2 was not the specific issue in *Hackett* but this court does not find justification therein to extend its prohibition to Reasoning Level 2 in the face of DOT Appendix C and the definition of unskilled work, in the face of *Hackett*'s specific statement regarding Reasoning Level 2, and absent a specific holding by that court binding on this court."); *Couch v. Berryhill*, 2017 WL 1194344, at *4 (E.D. Okla. March 13, 2017) ("In accordance with the court's findings in *Hackett*, a restriction to simple work is consistent with this reasoning level [of 2]."); *Goleman v. Colvin*, 2016 WL 3556958, at *4 (W.D. Okla. May 6, 2016) (where RFC limited claimant to "simple, routine, repetitive instructions[,] [t]he ALJ properly relied on the jobs identified by the VE with a reasoning level of two."). This eliminates the three jobs with reasoning level 3. *See* DICOT §§ 209.687-026 (mail clerk, light), 249.587-018 (document preparer, sedentary), 209.567-014 (order clerk, sedentary). If no other jobs are eliminated, however, this is harmless

error, because six jobs remain.  *See Stokes*, 274 Fed. Appx. at 684 (finding that any error on whether claimant could perform jobs was harmless error since there were still two jobs claimant could perform and no "reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country.").   However, Claimant raises challenges to two other positions in his first and fifth arguments.

Claimant's first contention is that the cafeteria attendant job should also be eliminated because it requires significant public contact.  The DICOT listing describes the "people interaction" as serving and "not significant," and describes the job as:  "Carries trays from food counters to tables for cafeteria patrons. Carries dirty dishes to kitchen. Wipes tables and seats with dampened cloth. Sets tables with clean linens, sugar bowls, and condiments. May wrap clean silver in napkins. May circulate among diners and serve coffee and be designated Coffee Server, Cafeteria Or Restaurant (hotel & rest.)." § 311.677-010.   Claimant's unsupported contention, in its entirety, is that he "clearly cannot perform this job because it is antithetical to the ALJ's hypothetical."  Docket No. 12, p. 6.  This assertion is in direct opposition to both the VE testimony and the DICOT listing, and this argument is therefore unavailing.  *See Poppa v. Astrue*, 569 F.3d 1167, 1174 (10th Cir. 2009) ("Because there were no conflicts between the VE's testimony and the DOT's job descriptions, the ALJ's error in not inquiring about potential conflicts was harmless.").  This means that six jobs still remain and the harmless error standard applies.

Turning to Claimant's fifth contention, the Court first notes that Claimant has not objected to the assigned RFC and raises only step five arguments.  Here, he contends that

the ALJ's hypothetical to the VE did not account for his nonsevere impairments of pneumonia and pleurisy because the laundry laborer job, DICOT § 361.687-018, requires frequent exposure to wet and/or humidity, which he argues is error because he has known problems with his lungs.  He provides no support for his argument, in either his Opening or Reply briefs, that this medical history provides known functional limitations and, as noted previously, makes no challenge to the ALJ's assigned RFC which likewise contains no related limitations.  "The court is unable to address contentions for which a claimant fails to develop the factual and legal bases for his arguments." *Holland v. Colvin*, 2015 WL 1003615, at *6 (W.D. Okla. Mar. 5, 2015) (citing *Threet v. Barnhart,* 353 F.3d 1185, 1190 (10th Cir.2003) (declining to speculate on claimant's behalf when argument on an issue is "insufficiently developed")).

Finally, Claimant's sixth contention is that the ALJ failed to find the remaining jobs exist in significant numbers because the assessment only applied to all nine jobs, collectively.  Even with the three jobs with reasoning level 3 eliminated, six jobs remain. DICOT §§ 301.687-014 (day worker, 795,590 jobs), 361.687-018 (laundry laborer, 2,239,840 jobs), and 919.687-014 (cleaner 341,660 jobs), 222.687-014 (garment sorter, 2,194,360 jobs), 311.677-010 (cafeteria attendant, 374,940 jobs), 209.587-010 (addresser, 2,242,920 jobs).  As discussed further below, the Court declines to find reversible error here.

Courts have declined to set a rule establishing what constitutes a significant number of jobs for purposes of the Social Security Act. *See, e. g., Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). Instead, the ALJ should determine numerical significance

11

based on an individualized evaluation of the facts of each case and, most importantly, her own common sense.  *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (citing *Trimiar*, 966 F.2d at 1330).  Factors the ALJ should consider in this analysis include: "the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on." *Trimiar*, 966 F.2d at 1330 (internal citations omitted).  However, importantly here, when the number of jobs available in the national economy is "much larger" than the 650 to 900 regional jobs at issue in *Trimiar*, a multi-factor analysis is not generally necessary.  *Raymond v. Astrue*, 356 Fed. Appx. 173, 178 n.2 (10th Cir. 2009) ("*Trimiar* does not hold that . . . a court must engage in a factoral analysis when the number of jobs [nationally] available is, as here (1.34 million), much larger.").

Where, as here, "an ALJ erroneously included one or more jobs and is left with the remaining jobs a claimant can perform with her residual functional capacity[,]" *Evans v. Colvin*, 640 Fed. Appx. 731, 735-736 (10th Cir. 2016), the harmless error standard applies. *Id.*  "[T]here is no bright-line answer to how many jobs are enough for a court to say, as a matter of law, that the number is significant, but the number appears to be somewhere between 100, the number of jobs in *Allen* that we refused to consider significant for harmless-error purposes, and 152,000, the lowest number of jobs we have considered (in *Stokes*) to be sufficient so far for application of harmless error." *Id.* at 736.  In this case, each of those remaining jobs meets this threshold for significant numbers separately, much less in combination.  *See* DICOT §§ 301.687-014 (day worker, 795,590 jobs), 361.687-018

(laundry laborer, 2,239,840 jobs), and 919.687-014 (cleaner 341,660 jobs), 222.687-014 (garment sorter, 2,194,360 jobs), 311.677-010 (cafeteria attendant, 374,940 jobs), 209.587-010 (addresser, 2,242,920 jobs).   Thus, the elimination of three jobs, *see* DICOT §§ 209.687-026 (mail clerk), 249.587-018 (document preparer), 209.567-014 (order clerk), is harmless error because six other jobs remain in significant numbers.

## Conclusion

The Court finds that the decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Accordingly, the decision of the Commissioner is AFFIRMED.

**DATED** this 12th day of February, 2024.

_____

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**